IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:12CR3083** |
| vs. | |
| JEFFREY A. ANDERSON, | **FINDINGS, RECOMMENDATION AND ORDER** |
| Defendant. | |

This matter is before the court on the defendant's motion to suppress (Filing No. 38) and motion to dismiss (Filing No. 45). For the reasons set forth below, the motions should be denied.

## BACKGROUND

On June 20, 2012, the Gosper County, Nebraska Sheriff's office forwarded a complaint received from the mother of a minor child ("M.A.") to Eric Jones of the Nebraska State Patrol. According to M.A.'s mother, an unknown individual sent M.A. sexually explicit images through Facebook accounts. M.A. was eleven years old at the time.

On or about June 27, 2012, Sgt. Jones was granted access to M.A.'s Facebook account and assumed her identity. Using M.A.'s login and password information, Sgt. Jones reviewed previous correspondence received by M.A. from an individual known as Bob Shepherd. Messages from Shepherd were sexually explicit in nature, including one photograph of a man and a women engaging in vaginal intercourse. Sgt. Jones testified that the image appeared to originally contain a picture of an adult male and an adult female, but was modified or manipulated to place M.A.'s head and face on the body of

the woman.   Sgt. Jones further testified that a message to M.A. from Shepherd accompanying the image stated something similar to: "This is what we will do."

Sgt. Jones conducted an investigation and through information provided by various internet service providers, determined that Bob Shepherd was an alias for defendant Jeffery Anderson.  M.A. is Anderson's half-sister.

On July 10, 2012, Sgt. Jones and Sgt. Arnold of the Nebraska State Patrol, along with two members of the McCook police force, drove to a trailer court in McCook, Nebraska to contact Anderson. The law enforcement officers were not in uniform and were in unmarked cars.  Sgt. Jones' badge was prominently displayed.  His firearm was holstered at his side and was clearly visible.  Sgt. Jones and the two officers from the McCook police department initiated a conversation with Anderson.   The officers approached a trailer where Anderson and two other individuals were on the front porch. Jones informed Anderson that he needed to come with the law enforcement officers for questioning at the McCook police station.   Anderson was placed in the front of the unmarked car and taken to the police station for an interview.   Anderson appeared coherent and responsive, and he did not smell of alcohol.

Once at the McCook police station, Anderson was led to a ten-foot by ten-foot interview room.   The interview room contained video recording equipment, but the equipment did not work.  Jones read Anderson his <u>Miranda</u> rights.  Anderson stated he understood his rights and he agreed to speak with Jones outside the presence of an attorney.  Jones made no promises and offered no inducements to secure Anderson's cooperation in obtaining a statement.  No other law enforcement officers were present during the questioning.   Anderson was coherent during questioning, gave responsive answers, and did not appear to be under the influence of alcohol or a controlled substance. Jones did note that Anderson appeared nervous and was shaking, but based on

his past experience, Jones did not consider Anderson's response atypical of those who face or submit to questioning by law enforcement.  During the interview, Anderson made incriminating statements.

The interview lasted approximately 30 minutes.  At the end of the interview Anderson was placed under formal arrest and booked.  Anderson completed the booking forms typically used by the city jail.  On the booking form, Anderson indicated that he consumed alcohol daily and had last consumed alcohol the previous night.  In answer to how much alcohol he consumed in a day, Anderson answered with a single word – "case."  Ex. 2, p. 4 (question 34).

## LEGAL ANALYSIS

### A.    Motion to Suppress

Anderson seeks to suppress the incriminating statements he made during the interview at the McCook police station.  Under Miranda v. Arizona, 384 U.S. 436 (1966), law enforcement officers are required to warn a suspect of his constitutional rights to counsel and against self-incrimination prior to initiating custodial interrogation.

> Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 475, 86 S.Ct. 1602. The inquiry has two distinct dimensions. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of

comprehension may a court properly conclude that the <u>Miranda</u> rights have
been waived.

<u>Bell v. Norris, 586 F.3d 624, 630 (8th Cir. 2009)</u>(internal citation omitted).

    The determination of whether a defendant has knowingly and voluntarily waived
his <u>Miranda</u> rights is "an extremely fact sensitive analysis." <u>United States v. Nguyen,
608 F.3d 368, 374 (8th Cir. 2010)</u> (citing <u>United States v. Boyd, 180 F.3d 967, 977 (8th
Cir. 1999</u>)).  Intoxication is one factor the court can consider in determining if a waiver
was voluntary.  But a confession is not deemed involuntary merely because an individual
is under the influence of drugs and/or alcohol.  <u>United States v. Howard, 532 F.3d 755,
763 (8th Cir. 2008)</u>.  Rather, Anderson "must show his intoxication caused his will to be
*overborne*." <u>Id.(emphasis in original).</u>

    Nothing in the record indicates Anderson was under the influence of alcohol
during questioning.  Sgt. Jones credibly testified that he did not smell any alcohol on
Anderson's breath.  Further, Anderson appeared coherent and provided responsive
answers to Sgt. Jones' questions, and he did not exhibit any "bizarre" behavior indicative
of being under the influence.

    Anderson contends, however, that his <u>Miranda</u> waiver and his statements
thereafter were involuntary, and the officer should have realized as such, because: (1) on
his booking sheet, Anderson indicated that he drinks a case of beer a night and (2)
Anderson was visibly shaking during the interview with Sgt. Jones.   Anderson suggests
his shaking was due to alcohol withdrawal, and as a result, his <u>Miranda</u> waiver and
statements were involuntary.  As evidence to support this theory, Anderson points to the
booking questionnaire in which he indicated he drank a "case" a night.

4

Any suggestion that Anderson's shaking was caused by detoxification tremors, without additional evidence, is mere speculation.  Sgt. Jones' explanation for Anderson's shaking – that Anderson appeared nervous about being questioned by the police – is more plausible and convincing, and a reasonable officer in Sgt. Jones position would have considered Anderson's mannerisms attributable to this rather typical nervous response and not to alcohol detoxification.

On July 10, 2012, law enforcement officers arrived at Anderson's home in plain clothes with their weapons holstered.  Anderson was notified in advance that the officers were coming, but he did not leave his home.  When the officers arrived, Anderson had no choice but to accompany them to the police station, but Anderson was not handcuffed and was placed in the front seat of the law enforcement vehicle.  Anderson was placed in a small room for questioning, but the questioning lasted only 30 minutes.   Anderson never requested counsel.  Weapons were never drawn, and no threats or promises were made to elicit Anderson's cooperation.

Based on the totality of the evidence presented, a reasonable officer in Sgt. Jones' position would have believed Anderson's <u>Miranda</u> waiver was knowing and voluntary. Moreover, even assuming Anderson drank a case of beer the night before he was contacted by law enforcement, there is insufficient evidence to indicate Anderson was suffering so severely from alcohol withdrawal that his will was overborne.  There is no credible evidence that either Anderson's <u>Miranda</u> waiver, or his responses to law enforcement questioning on July 10, 2012, were involuntary or the product of coercion. Anderson's motion to suppress should be denied in its entirety.

B.    <u>**Motion to Dismiss**</u>

Anderson has moved to dismiss this case claiming Count I of his indictment, which alleges violations of 18 U.S.C. § 2256(8) and 18 U.S.C. § 2252A(a)(2)(A), infringes upon his right to engage in free speech protected under the United States Constitution.  The definitional section in question provides:

> (8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> > (A)    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> >
> > (B)    such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> >
> > (C)    such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C § 2256(8).

Anderson argues that the definitions within § 2256(8) are overbroad as applied to him because the image in this case – an image of an adult female morphed with M.A.'s head and face engaging in a sexual act – does not include an identifiable minor actually engaging in sexually explicit conduct, and the prohibition on any "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct" is not narrowly tailored to allow for protected speech.

Child pornography is not protected speech under the First Amendment.  New York v. Ferber, 458 U.S. 747 (1982).  Governing bodies are "entitled to greater leeway" in the

regulation of pornographic depictions of children, (id. at 756), to safeguard "the physical and psychological well-being" of minors.  Id. (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607 (1982).  Ferber noted that the Court has "sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights."  Id.  And to that end, "[t]he value of permitting  . . . photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis."  Id. at 762.  Laws creating limitations on creating and disseminating child pornography are related to the government's interest in combating the sexual abuse of children.  Id. at 759.

Notwithstanding this governmental interest, Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), held that two provisions of the Child Pornography Prevention Act ("CPAA"), which addressed virtual child pornography, were unconstitutional under the First Amendment.  Free Speech Coalition struck down sections of the CPAA which defined child pornography to include visual depictions created without involving any actual minor children – i.e., entirely computer generated images or images portraying very young looking adults.  The Court found those sections of the CPAA attempted to "prohibit[] speech that records no crime and creates no victims by its production."  Id. at 250.  Free Speech Coalition explained that "morphed images may fall within the definition of virtual child pornography" provided "they implicate the interests of real children. . . ."  Id. at 242.

Applying Ferber and Free Speech Coalition, the Eighth Circuit has held that 18 U.S.C. § 2256(8)(C) does not violate the First Amendment where the morphed image at issue was created by placing the face of an actual minor child on the body of a nude child.  United States v. Bach, 400 F.3d 622 (8th Cir. 2005).  Bach involved the distribution and receipt of a picture of a nude minor boy in a sexually explicit pose. Below the image was the name of a well-known child entertainer.  Evidence at trial

showed "that a photograph of [the well-known child entertainer's] head had been skillfully inserted onto the photograph of the nude boy so that the resulting image appeared to be the [child entertainer]" engaging in the explicit pose.  Id. at 625.  The defendant moved to dismiss the count of his indictment based on this image of the nude boy, arguing the image was protected speech under the First Amendment and that 18 U.S.C. § 2256(8)(C) was unconstitutional.

Bach reviewed the holdings in Ferber and Free Speech Coalition and concluded the image in question was not protected speech because, unlike the images in Free Speech Coalition, the interests of "real children [were] implicated in the image . . . " Id. at 632.  The court first noted that the body in the image was that of a real boy and a real crime was committed.  "[T]he interests of a real child were implicated by being posed in such a way." Id.  Bach explained:

> Although there is no contention that the nude body actually is that of [the child entertainer] or that he was involved in the production of the image, a lasting record has been created of [the child entertainer], an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed. Unlike the virtual pornography or the pornography using youthful looking adults which could be prosecuted under subsections (B) and (D), as discussed in Free Speech Coalition, this image created an identifiable child victim of sexual exploitation. In Free Speech Coalition the Supreme Court continued to recognize the government's compelling interest in protecting a minor's physical and psychological well being, see 535 U.S. at 249–50, 122 S.Ct. 1389, building on its decision in Ferber, pointing out the harm arising from pornography which is "intrinsically related" to the sexual abuse of children. 458 U.S. at 759, 102 S.Ct. 3348.

Id. at 632.

In Bach, the identifiable image of an actual child was placed on the image of a nude child's body.  But Anderson allegedly placed the image of an actual child on the body of an adult engaged in sexually explicit conduct.  Anderson claims this distinction

mandates a different result; that the image he allegedly created is not child pornography, but rather speech protected by the First Amendment.  Although the Eighth Circuit has not addressed a factually identical scenario, the Second and Sixth Circuits have.

In United States v. Hotaling, 634 F.3d 725 (2d Cir. 2011), the defendant argued "that the morphed child pornography he created using the faces of actual minors and the bodies of adult females" was protected speech under the First Amendment.  Id. at 729. Hotaling disagreed, explaining:

> In this case, even though the bodies in the images belonged to adult females, they had been digitally altered such that the only recognizable persons were the minors.  Furthermore, the actual names of the minors were added to many of the photographs, making it easier to identify them and bolstering the connection between the actual minor and the sexually explicit conduct.  Unlike the computer generated images in Free Speech Coalition, where no actual person's image and reputation were implicated, here we have six identifiable minor females who were at risk of reputational harm and suffered the psychological harm of knowing that their images were exploited and prepared for distribution by a trusted adult.

Id. at 730.

The Sixth Circuit reached a similar conclusion in Doe v. Boland, 698 F.3d 877 (6th Cir. 2012).  The defendant in Boland created morphed images, at least one of which placed the face of an identifiable minor onto the body of a nude adult woman performing sexual acts on two men.  The defendant argued the morphed images consisted of constitutionally protected free speech.  Boland disagreed, finding the minors depicted in the images were "real victims with real injuries."  Id. at 883.  Boland court pointed to the "relatively weak expressive value of morphed images."  Id.  "And unlike pornography that 'appears to' depict children, morphed images are never necessary to achieve an artistic goal."  Id. at 883-84 (citing Free Speech Coalition, 535 U.S. at 247.).

9

Citing People v. Gerber, 196 Cal. App. 4th 368 (Cal. Ct. App. 2011); Parker v. State, 81 So. 3d 451 (D.Ct. of App. of Fla. 2011), and State v. Zidel, 940 A.2d 255 (N.H. 2008), Anderson argues that the morphed image of M.A.'s face on an adult female body is protected speech.  As explained below, the defendant's cases and accompanying argument are not persuasive as applied to the evidence of record and the allegations lodged against Anderson.

Parker interpreted a Florida statute which defined child pornography to include images of actual children engaging in sexually explicit conduct.  Parker specifically confined its analysis to this relevant statutory language, and it purposefully did not engage in any First Amendment analysis.  And while Zidel and Gerber did conduct a First Amendment analysis of their states' respective child pornography laws, both cases involved the possession of morphed images, not distribution or receipt of those images. Specifically distinguishing the Eighth Circuit's decision in Bach, Zidel clarified that unlike the defendant in Bach, Zidel was not charged with receipt of child pornography, but mere possession.  Zidel reasoned that when morphed images of child pornography have allegedly been "received" or "distributed," the interests of real children arguably may be implicated because the pictures did not remain within the privacy of a person's home, but were instead disseminated.   In contrast, mere possession (without dissemination) of morphed images that depict the heads and necks of minor females superimposed upon naked female bodies does not harm a child and as such, possession of such images is speech protected under the First Amendment.  Zidel, 940 A.2d at 263. Similarly, interpreting a California statute, Gerber held that mere possession of virtual child pornography depicting a child's head superimposed on an adult body "does not necessarily involve sexual exploitation of an actual child" and therefore "remains protected by the First Amendment to the United States Constitution."  Gerber, 196 Cal.App.4th at 386.

Following the reasoning in Bach, Hotaling and Boland, the undersigned magistrate judge finds the morphed image in this case (see Ex. 1) is not protected under the First Amendment.   Unlike the allegations in Zidel and Gerber, Anderson has been charged with distributing child pornography, implicating associated and foreseeable psychological harm to an identifiable child, M.A., that may not arise from mere possession of the image.   As stated in Ferber and Free Speech Coalition, the government has a compelling interest in protecting minors from both physical and mental harm.   See Bach, 400 F.3d at 632.   Here, M.A.'s face is clearly visible and is morphed onto the body of an adult female engaged in vaginal intercourse with an adult male.   While this case is somewhat factually distinguishable from Bach, Bach clearly recognized that a minor child whose face and head are morphed onto a pornographic image is exposed to psychological injury, and that the government has a compelling interest in protecting minor children from such harm. Id. at 632.

M.A. is an identifiable minor who "was at risk of reputational harm and suffered the psychological harm of knowing that [her] image was exploited and prepared for distribution by a trusted adult."   Hotaling, 634 F.3d at 730.   M.A. is a "real victim with real injuries" arising from Anderson's alleged conduct.   Boland, 698 F.3d at 883. Anderson's alleged conduct is not protected under the First Amendment.

Anderson's motion to dismiss should be denied in its entirety.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Jeffrey A. Anderson's motion to suppress (Filing No. 38) and the motion to dismiss, (Filing No. 45), be denied in all respects.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS FURTHER ORDERED, the trial of this case is set to commence before the Honorable John M. Gerrard at 9:00 a.m. on February 11, 2013, or as soon thereafter as the case may be called, for a duration of five (5) trial days, in Courtroom 1, United States Courthouse, Lincoln, Nebraska.  Jury selection will be held at commencement of trial.

December 26, 2012.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge